# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **GAIL ARNETTE SMITH,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:  2:06-CV-1663-RDP** |
| | ) | |
| **CITY OF HOOVER, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION

### I.      INTRODUCTION

Pending before the court is Defendants City of Hoover, Tim McCardle, and Nick Derzis's

Motion to Dismiss (Doc. # 9) filed on October 30, 2006, Defendant Compass Bancshares, Inc.'s

Partial Motion to Dismiss (Doc. # 13) filed on November 6, 2006, and Defendant Jefferson County's

Motion to Dismiss (Doc. # 28) filed on February 20, 2007.[1]  The motions have been fully briefed by

the parties and are now under submission.  On January 31, 2007, Plaintiff filed her Second Amended

Complaint (Doc. # 23), including claims against Defendant Jefferson County ("Jefferson County").

As Plaintiff has alleged the same claims in her Second Amended Complaint as she asserted in her

original complaint against Defendants City of Hoover, Tim McCardle, Nick Derzis, and Compass

Bancshares, Inc.,[2] the motions to dismiss filed by those Defendants will be considered in conjunction

---

[1]On January 31, 2007, Plaintiff filed her Second Amended Complaint (Doc. # 23), including claims against Defendant Jefferson County ("Jefferson County").

[2]Originally, Plaintiff's Second Amended Complaint appeared to add an allegation of malicious prosecution as to Defendant McArdle.  However, Plaintiff filed a motion to strike this from the Second Amended Complaint on February 5, 2007 (Doc. # 25), acknowledging that she had represented to the court that she wished to make *only* those amendments listed in her Motion for Leave to Amend Complaint (Doc. # 15) made on December 1, 2006, and that the court had granted

with Plaintiff's Second Amended Complaint.  For the reasons outlined below, the court finds the

motions are due to be granted.  Therefore, all claims against Defendants City of Hoover, Tim

McArdle, Nick Derzis, and Jefferson County will be dismissed with prejudice.  Additionally, the

claim against Defendant Compass Bancshares, Inc. for "racial profiling" will be dismissed with

prejudice.[3]

## II.      STATEMENT OF FACTS

At about 3:20 p.m. on July 20, 2004, Plaintiff Gail Arnette Smith ("Plaintiff") deposited a

check for $200.00 into her account at the Compass Bank branch located in Riverchase and left the

bank with her deposit slip.  (Doc. # 23 ¶ 12).  On July 21, 2004, Jason Clark made an incident report

to Hoover Police Officer C. Harper, who took Clark's statement:

> The victim and his wife Susan have a joint account at Compass Bank.  Between the
> times listed some unknown subject(s) stole the listed items.  The items were in
> possession of Susan Clark.  The victim advised one check had surfaced, but was
> denied by the bank.  The signature on the check is an exact copy to Susan's.  The
> victim advised the check card has been used several times for approximately $300.
> He will provide a list of the exact charges on a later date.  It is unknown where
> property was taken.  A copy of the check that was denied is attached to this report.
> The driver's license number on the check comes back to Brandon Campbell of 1656
> Russett Crest Lane in Hoover.

(Doc. # 23 ¶ 13).

---

such motion to amend on that premise.  The court having granted Plaintiff's motion to strike this
allegation from her Second Amended Complaint, the claims against and allegations involving
Defendants City of Hoover, Tim McCardle, Nick Derzis, and Compass Bancshares, Inc. are
substantially the same as those alleged in Plaintiff's original complaint, and thus their motions to
dismiss survive Plaintiff's amendment.

[3]Plaintiff has abandoned her claims against the fictitious parties allegedly employed by
Defendant Compass Bancshares, Inc. (Jane Doe and Jennifer Doe) in her Second Amended
Complaint (Doc. # 23).  Therefore, the court finds these claims are due to be dismissed as moot.

On August 23, 2004, two unknown employees of Defendant Compass Bancshares, Inc. ("Compass") told Defendant McArdle ("McArdle"), a police officer employed by the Defendant City of Hoover ("Hoover") and supervised by Defendant Police Chief Nick Derzis ("Derzis"), that Plaintiff had attempted to cash a forged check at the Riverchase branch of Compass and provided McArdle with two photographs of Plaintiff, one showing her at the teller's window and the other showing her exiting the bank with her deposit slip. (Doc. # 23 ¶ 14). Plaintiff alleges that Compass's employees did this with the full knowledge that a video tape in Compass's possession would have shown that someone other than Plaintiff had attempted to cash a forged check. (Doc. # 23 ¶ 14). Plaintiff asserts that Compass and its employees engaged in "racial profiling" when they made their determination that Plaintiff was the person who had attempted to cash a forged check on July 20, 2004. (Doc. # 23 ¶ 14).

On August 23, 2004, McArdle, appeared before the Magistrate Judge of the District Court of Jefferson County and swore out a warrant for the arrest of Plaintiff, stating that:

> Smith, Gail Arnette did, with intent to defraud, possess or utter a forged instrument, to-wit: a check as follows; See Attached Document . . . having knowledge that said instrument was forged, in violation of Section 13A–9–6 of the Alabama Criminal Code, against the peace and dignity of the state of Alabama.

(Doc. # 23 ¶ 15). Plaintiff alleges that this action was a result of McArdle "willfully and knowingly, racially profil[ing] the Plaintiff as the person who had attempted to cash the abovementioned forged check at Compass Bank." (Doc. # 23 ¶ 15). On October 13, 2004, Plaintiff was arrested at her place of work[4] and charged with "Possession of a Forged Instrument, 2nd Degree," which is a Class C

---

[4]In her complaint Plaintiff elaborates on the circumstances of her arrest, claiming she "was publicly arrested at her place of work, led out in handcuffs, placed in a police car and taken to the Jefferson County Jail where she was subjected to a body cavity search and then incarcerated in the Jefferson County Jail until her husband was notified and obtained her release." (Doc. # 23 ¶ 14).

Felony.[5]  Thereafter, she was placed in a police car and taken to the Jefferson County Jail where she alleges that she was assaulted and battered by Defendant Jefferson County's employees or agents and was subjected to a body cavity search before being incarcerated in the Jefferson County Jail.  (Doc. # 23 ¶ 16).  Plaintiff remained in jail until her husband was notified and obtained her release.  (Doc. # 23 ¶ 16).  Plaintiff alleges that, as a result, she lost her job and suffered public humiliation, embarrassment, damage to her reputation, and other injuries.  (Doc. # 23 ¶ 14).

On October 15, 2004, Plaintiff was indicted on the charge of Possession of a Forged Instrument in the Second Degree.  (Doc. # 23 ¶ 18).  On November 2, 2004, Plaintiff first appeared in court and was appointed an attorney.  (Doc. # 23 ¶ 19).  The case was continued until November 24, 2004, when the court issued subpoenas for Susan Clark and McArdle, and the case was again continued to January 5, 2005.  (Doc. # 23 ¶ 19–20).  At the January 5, 2005 hearing, the court again issued subpoenas for Susan Clark and McArdle, as neither witness appeared in court at the hearing, and the case was continued until January 19, 2005.  (Doc. # 23 ¶ 21).  On January 19, 2005, the Jefferson County Assistant District Attorney moved to *nol prosse* the charge against Plaintiff, since it was determined that she was not the person who had attempted to cash the Clarks' stolen check.

---

[5]The Alabama Code defines the crime of "Possession of a Forged Instrument, 2nd Degree," stating:  "(a) A person commits the crime of criminal possession of a forged instrument in the second degree if he possesses or utters any forged instrument of a kind specified in Section 13A–9–3 with knowledge that it is forged and with intent to defraud."  ALA. CODE § 13A–9–6.

Alabama Code section 13A–9–3 states in relevant part: "(a) A person commits the crime of forgery in the second degree if, with intent to defraud, he falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or to represent if completed: (1) A . . . check . . . or other commercial instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status."  ALA. CODE § 13A–9–3.

(Doc. # 23 ¶ 22).  At the hearing, the court recalled all the outstanding writs and neither witness appeared for the hearing.  (Doc. # 23 ¶ 22).

Sometime after the charges were dropped, Plaintiff applied for a position with Mount Royal Towers in Birmingham and was denied employment.  (Doc. # 23 ¶ 23).  On November 29, 2005, Mount Royal Towers informed Plaintiff that her employment application had been denied due to their investigation of her criminal background.

On April 3, 2006, Plaintiff filed a Notice of Claim with the City of Hoover.  (Doc. # 23 ¶ 25).  Plaintiff's allegations in her Notice of Claim are substantially the same as those in the present case.  Specifically, Plaintiff alleges that all Defendants, separately and in concert and acting under color of state or local law, engaged in the following willful and malicious conduct: (1) failure to properly supervise and train employees of the Hoover police force; (2) failure to take immediate action in preventing the injuries to the Plaintiff; (3) failure to take adequate precautions in the hiring, promotion, and retention of law enforcement personnel; and (4) failure to properly institute and follow proper investigatory techniques.  (Doc. # 23 ¶¶ 27, 29, 30).  Plaintiff alleges that these actions deprived her of the rights, privileges, and immunities secured by the Fourth, Eighth, and Fourteenth Amendments to the U.S. Constitution. (Doc. # 23 ¶ 27).  As a result, Plaintiff claims to have suffered:  personal bodily injury; public humiliation; degradation; emotional distress; mental anguish; loss of her employment; and injury to her reputation.  Plaintiff asserts that she is entitled to recovery of the expenses she incurred as a result of Defendants' actions, including medical and legal fees, damages for loss of potential for future employment, and other damages.  (Doc. # 23 ¶ 28).  Plaintiff also claims that Defendants Hoover and Derzis, despite their knowledge that this pattern of conduct was being carried out by their agents and employees, have made no effort to

discontinue or prevent the course of conduct, have not attempted to redress Plaintiff's injuries, and have not taken any disciplinary action against any of their employees or agents, including McArdle. (Doc. # 23 ¶ 31).   Plaintiff further alleges that the conduct of Hoover, Derzis, and McArdle constitutes willful, intentional and, malicious abuse of authority.  (Doc. # 23 ¶ 32).

Plaintiff avers that Defendant Compass had in its possession at all times all the information necessary to determine that she was not the individual who attempted to cash a stolen check, yet Compass's agents nevertheless identified her to law enforcement as the person responsible, and thereby set in motion her arrest and all that followed.  (Doc. # 23 ¶ 34).  Specifically, Plaintiff claims that Compass had the security camera video tapes in its possession, showing which customers made specific transactions at specific times, as well as the teller tapes that show transaction number, date, time, teller, and the transaction description.  (Doc. # 23 ¶ 34).  Plaintiff claims Compass agents falsely accused her of possession of a forged instrument as a result of "racial profiling" of Plaintiff, instead of diligent efforts to identify the person responsible.  (Doc. # 23 ¶ 34).

Finally, Plaintiff alleges that Defendant Jefferson County, through its employees or agents, illegally subjected her to a body cavity search and otherwise assaulted and battered her before she was incarcerated in the Jefferson County Jail in violation of the Eighth Amendment of the U.S. Constitution.  (Doc. # 23 ¶ 14; Doc. # 23 ¶ 38).

## III.    STANDARD OF REVIEW

Defendants have challenged the sufficiency of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), which provides for dismissal of a complaint for failure to state a claim upon which relief may be granted.  FED. R. CIV. P. 12(b)(6).  A court may dismiss a complaint under Rule

12(b)(6) only if it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957).

In deciding a Rule 12(b)(6) motion, the court must "accept all well-pleaded factual allegations in the complaint as true and construe the facts in a light most favorable to the non-moving party." *Dacosta v. Nwachukwa*, 304 F.3d 1045, 1047 (11th Cir. 2002) (citing *GJR Invs., Inc. v. County of Escambia, Fla.*, 132 F.3d 1359, 1367 (11th Cir. 1998)). "[U]nsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (citing *Marsh v. Butler County*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (en banc)). Further, "[a] complaint may not be dismissed because the plaintiff's claims do not support the legal theory he relies upon since the court must determine if the allegations provide for relief on *any* possible theory." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original). Nevertheless, conclusory allegations, unwarranted deductions of facts, or legal conclusions masquerading as facts will not prevent dismissal. *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002); *see Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) ("[A] plaintiff must plead specific facts, not mere conclusional allegations, to avoid dismissal for failure to state a claim. We will thus not accept as true conclusory allegations or unwarranted deductions of fact.") (internal citations omitted); *Kirwin v. Price Commc'ns. Corp.*, 274 F. Supp. 2d 1242, 1248 (M.D. Ala. 2003) ("[A]lthough the complaint must be read liberally in favor of the plaintiff, the court may not make liberal inferences beyond what has actually been alleged."), *aff'd in part*, 391 F.3d 1323 (11th Cir. 2004).

IV.    DISCUSSION

A.    Defendants Hoover, Derzis, and McArdle

Plaintiff has asserted two claims against Hoover, Derzis, and McArdle: a Fourth and Fourteenth Amendment claim for unreasonable search and seizure and an Eighth Amendment claim for cruel and unusual punishment.  Defendants Hoover, Derzis, and McArdle's motion to dismiss is due to be granted as the Second Amended Complaint, taken as a whole, fails to state a claim against Hoover, Derzis, and McArdle for which relief can be granted.  The official capacity claims against the individual police officers are redundant of the same claims against Hoover, and are due to be dismissed for that reason.  In addition, Derzis and McArdle are entitled to qualified immunity as to the Fourth Amendment claims for false arrest and excessive force, and neither individual participated in any conduct giving rise to an alleged Eighth Amendment violation (which Plaintiff asserts took place in the Jefferson County Jail).  As the individual officers have committed no constitutional violations, Hoover cannot be held liable for such violations and Plaintiff does not allege any separate claims against Hoover.  Accordingly, all claims against Hoover, Derzis, and McArdle are due to be dismissed with prejudice.

1.    The Official Capacity Claims Against the Individual Police Officers are Redundant of Her Claims Against the City of Hoover.

In her Second Amended Complaint, Plaintiff asserts claims against McArdle and Derzis in their individual and official capacities.  The official capacity claims against these defendant police officers are made in addition to the same claims against Hoover.  Official capacity claims exist to "impose [] liability on the entity that the officials represent, and not on them as individuals." *Welch v. Laney*, 57 F.3d 1004, 1008 (11th Cir. 1995) (citing *Brandon v. Holt*, 469 U.S. 464, 471–72

(1985)).  "Because suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly."  *Busby v. City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)).  Thus, claims against Derzis and McArdle in their official capacities are redundant of those against Hoover and, therefore, due to be dismissed.

> **2.    Plaintiff's Assertions that Defendants Violated the Eighth and Fourteenth Amendments Do Not State Claims Upon Which Relief Can Be Granted as the Appropriate Constitutional Claim Arises Under the Fourth Amendment.**

Count I of Plaintiff's Second Amended Complaint states, in relevant part:

> Each of the individual Defendants, separately and in concert, exercising their position of authority and acting under color of state law in their capacity of public officials and representative of the City of Hoover and Hoover Police Department, separately and in concert, acted willfully, knowingly, and purposefully with the specific intent to deprive Plaintiff of her right to freedom from illegal seizure of her person, freedom from unlawful arrest, and freedom from physical abuse, coercion, and intimidation, excess and unreasonable force.  All of said rights being secured to the Plaintiff by the provisions of the Fourth and Fourteenth Amendments to the Constitution of the United States, as well as her right to privacy.  As a proximate result of said actions Plaintiff was injured and damaged as aforesaid.

(Doc. # 23 ¶ 36).  Count II of the Plaintiff's Second Amended Complaint, entitled "Violation of the Eighth Amendment, Cruel and Unusual Punishment, Assault and Battery," states, in relevant part:

> Each of the individual Defendants, separately and in concert, acting individually exercising their position of authority and acting under color of state law in their capacity of public officials and representative of the City of Hoover and Hoover Police Department separately and in concert, acted willfully, knowingly, and purposefully to trespass upon the person of the Plaintiff with the specific intent to assault and batter the Plaintiff when taking her into custody and performing an [sic] search of her body against her will.  Said activity was known by the Defendants to

9

carry risks of causing harm to the Plaintiff and in fact did cause harm to the Plaintiff which amount to cruel and unusual punishment under the Constitution of the United States and 42 U.S.C. [sic] 1983 on the occasion of Plaintiff's arrest, body search and detention in the Jefferson County jail by said Defendants serving the warrant issued by the Defendants [sic] Hoover.  Defendants knew such actions would take place upon their filing the warrant against the Plaintiff and her subsequent arrest. As a proximate result of said actions, Plaintiff was injured and damaged as aforesaid.

(Doc. # 23 ¶ 38).  These counts appear to allege two separate constitutional violations against Hoover, Derzis and McArdle: wrongful arrest and excessive force.  Plaintiff purports to bring her claims under the auspices of the Eighth and Fourteenth Amendments, in addition to the Fourth Amendment;[6] however, as explained below, her claims can be sustained under the Fourth Amendment only.[7]

The Fourth Amendment specifically guarantees individuals the right to be free from "unreasonable searches and seizures."  U.S. CONST. AMEND. IV.  An arrest is "the quintessential seizure of the person under [the] Fourth Amendment." *California v. Hodari*, 499 U.S. 621, 624 (1991) (internal quotation marks omitted).  In *Graham v. Connor*, 490 U.S. 386, 395 (1989), the

---

[6]Plaintiff, in her Second Amended Complaint, also adds "42 U.S.C. [§] 1983" as a basis for her claim in Count II.  However, the court treats this as simply another vehicle through which she attempts to allege a constitutional violation of her rights, and will not analyze this claim separately, since, if there is no constitutional violation, Defendants cannot be subject to § 1983 liability. Furthermore, Defendants McArdle and Derzis would be entitled to qualified immunity on any claim brought under § 1983, and Hoover would, in turn, benefit from this immunity, as discussed below in Part IV.A.3.

It should be noted that this is an amendment made in Plaintiff's Second Amended Complaint that was not permitted by the court's December 5, 2006 Order granting Plaintiff's Motion for Leave to File Amended Complaint.

[7]The court merely points out that there is no separate Fourteenth Amendment violation alleged.  However, to the extent that Plaintiff cites to the Fourteenth Amendment solely as its basis for asserting a Fourth Amendment claim against a local government, the court takes note of that. *See Elkins v. United States*, 364 U.S. 206, 213 (1960); *accord Mapp v. Ohio*, 367 U.S. 643 (1961); *Wolf v. Colorado*, 338 U.S. 25 (1949).

United States Supreme Court established that all excessive force claims which arise in the context of a law enforcement officer's alleged use of excessive force in the course of an arrest or seizure are to be analyzed under the Fourth Amendment.  Therefore, Plaintiff's claims must be analyzed under jurisprudence of the Fourth Amendment and her claims under the Eighth and Fourteenth Amendments do not state a claim against Hoover, Derzis and McArdle.

      **3.**      **The Individual Officer Defendants Derzis and McArdle are Entitled to the Protection of Qualified Immunity from Plaintiff's Fourth Amendment Claims.**

"Qualified immunity protects government officials performing discretionary functions from civil trial . . . and from liability if their conduct violates no clearly established statutory or constitutional rights of which a reasonable person would have known." *Lassiter v. Ala. A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc) (citations omitted).  The purpose of qualified immunity is to allow public officials, including police officers like Derzis and McArdle, to carry out their discretionary duties without the fear of personal liability or harassing litigation. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002) (citations omitted).  As such, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To receive the protections of qualified immunity, Derzis and McArdle first must show that they were acting within their discretionary duties at the time of the alleged actions in this case.  *Lee*, 284 F.3d at 1194.  Eleventh Circuit case law is clear that this burden rests with the public official, and that failure to satisfy this burden negates the qualified immunity defense.  *See Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004) (explaining that if defendants cannot meet their burden of showing that they were engaged in a discretionary function, they are ineligible

for qualified immunity).  To determine whether an official was engaged in a discretionary function, courts consider whether his acts were of a type that fell within his job responsibilities. *See id.* at 1265.  In making this inquiry, "[courts] ask whether the government employee was (a) pursuing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." *Id.*  Clearly, it was within McArdle's discretion to use information received from a bank regarding a forged check to investigate and request a warrant be sworn for the arrest of a person suspected of possessing the check.  McArdle's "goal" was to apprehend the forgery suspect and his "means" were the investigation and warrant request. *Lee*, 284 F.3d at 1194 (officer was acting in his discretionary authority when he arrested the plaintiff); *Byther v. City of Mobile*, 398 F. Supp. 2d 1222, 1235 (S.D. Ala. 2005) (officers responding to a dispatch report of an armed robbery and later apprehending and arresting the suspect were acting within their discretionary authority); *Slicker v. Jackson*, 215 F.3d 1225 (11th Cir. 2000) (officers who arrested plaintiff for disorderly conduct were acting within their discretionary authority).

As Plaintiff does not allege that Derzis personally effectuated any action that led to her arrest, her claims against him must be limited to the alleged negligent hiring and supervision of McArdle. It was also within Derzis's discretion to supervise the training and actions of the police officers employed by the Hoover, as supervision was his "goal" and the means he used, although unspecified, are neither challenged by Plaintiff nor crucial to the determination of whether he was acting within his discretion. *Holloman*, 370 F.3d at 1265.  Thus, the first requirement of the qualified immunity inquiry is satisfied as to both Derzis and McArdle.

After a defendant shows that he acted within his discretionary authority, the burden shifts to Plaintiff to show that qualified immunity is not appropriate. *Lee*, 284 F.3d at 1194.  Plaintiff must

demonstrate that her allegations, if true, establish a constitutional violation. *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). If no constitutional right was violated, assuming the plaintiff's allegations are true, the court need not inquire further. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). However, if a constitutional right would have been violated under the plaintiff's version of the facts, the next step is to ask whether the right was clearly established at the time of the alleged violation. *Hope*, 536 at 739.

       a.       **Based Upon Plaintiff's Allegations, Officer McArdle Did Not Falsely Arrest the Plaintiff So As To Violate Her Constitutional Rights.**

The Fourth Amendment encompasses the right to be free from arrest without probable cause. *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 1994). However, an officer is entitled to qualified immunity on a claim of unlawful arrest even if there is only arguable probable cause. *Jones v. Cannon*, 174 F.3d 1271, 1283 n. 3 (11th Cir. 1999) (saying, "[a]rguable probable cause, not the higher standard of actual probable cause, governs the qualified immunity inquiry"). The Eleventh Circuit has held that arguable probable cause exists when "an officer reasonably **could**— not necessarily **would**—have believed" that probable cause existed, in light of the information the officer possessed. *Crosby*, 394 F.3d at 1332–33 (citing *Durruthy v. Pastor*, 351 F.3d 1080, 1089 (11th Cir. 2003) (other citations omitted) (emphasis added)). Additionally, an arrest is objectively reasonable "when the facts and circumstances within the officer's knowledge . . . would cause a prudent person to believe, under the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Rankin v. Evans*, 133 F.3d 1425, 1435 (11th Cir. 1998) (quoting *Williamson v. Mills*, 65 F.3d 155, 158 (11th Cir. 1995)).

13

Whether arguable probable cause exists depends on the elements of the crime for which the subject is arrested. *Crosby*, 394 F.3d at 1333. Here, Plaintiff was arrested for possession of a forged instrument in the second degree. Under Alabama law, a person commits that offense if "he possesses or utters any forged instrument of a kind specified in Section 13A–9–3 with knowledge that it is forged and with intent to defraud." ALA. CODE § 13A– 9–6. Further, Alabama law provides that a person commits the crime of forgery in the second degree "if, with intent to defraud, he falsely makes, completes or alters a written instrument which is or purports to be, or which is calculated to become or to represent if completed: (1) A . . . check . . . or other commercial instrument which does or may evidence, create, transfer, terminate or otherwise affect a legal right, interest, obligation or status. (b) Forgery in the second degree is a Class C felony." ALA. CODE § 13A–9–3.

Plaintiff alleges that after Jason Clark made an incident report regarding a stolen check that had been denied by Compass, Compass's employees gave McArdle false information that Plaintiff attempted to cash the forged check. (Doc. # 23 ¶¶ 13–14). According to Plaintiff, the same bank employees provided McArdle with two pictures of her at the bank where the check was denied. (Doc. # 23 ¶ 14). In fact, Plaintiff's Second Amended Complaint specifically states that "Defendant Compass Bank had in its possession at all times all the information necessary to determine that Gail Smith was not the individual who attempted to cash a stolen check, yet proceeded [sic] racially profile her by identifying her to law enforcement as the person responsible, and thereby set in motion her arrest, and all that followed from that event." (Doc. # 23 ¶ 34). There is no question that Compass's report to law enforcement identifying Plaintiff as the perpetrator of the crime provided sufficient arguable probable cause such that reasonable officers in McArdle's position could have

14

believed that Plaintiff committed the offense in question.[8]  As McArdle has established arguable probable cause, he is entitled to qualified immunity on Plaintiff's claim of unlawful arrest.

As Plaintiff cannot establish that McArdle violated any of her constitutional rights, it follows that she cannot pursue a claim against Derzis for negligently hiring McArdle or negligently supervising him during the arrest.  That is, because McArdle had arguable probable cause to make the arrest, Derzis's decisions in hiring McArdle and/or supervising him as to this particular incident do not rise to the level of a constitutional or state law violation.

> **b.      Neither Derzis Nor McArdle Is Alleged To Have Violated Plaintiff's Constitutional Rights By Using Excessive Force.**

Plaintiff further alleges that excessive force was used against her during the course of her arrest.  (Doc. # 23 ¶¶ 37–38).  However, Plaintiff does not allege that either McArdle or Derzis actually assaulted or battered her, or used any force against her whatsoever.  Although her complaint is not a model of clarity, it appears that Plaintiff alleges that she was assaulted and battered by other officers who carried out the arrest warrant at her work.  (Doc. # 23 ¶ 38).  Plaintiff further alleges that the body cavity search performed on her while she was in the custody of Defendant Jefferson County  violated her Fourth and Eighth Amendment rights and that she was assaulted and battered by employees or agents of Defendant Jefferson County.  (Doc. # 23  ¶ 38).  However, she does not allege that either McArdle or Derzis participated in or specifically knew about this search, but rather states "Defendants knew such actions would take place upon their filing the warrant against the

---

[8]This is the case even if that report was erroneous.  Plaintiff has not alleged any facts to suggest that any law enforcement official was aware of the report's inaccuracy.

15

Plaintiff and her subsequent arrest."[9]  (Doc. # 23 ¶ 38).  Plaintiff seems to suggest that Defendants Hoover, McArdle, and Derzis should have expected that Plaintiff's Eighth Amendment rights would have been violated because of their actions concerning the arrest warrant.  This allegation is insufficient to establish an Eighth Amendment violation against these Defendants.  As Plaintiff has not claimed that either officer used any force against her, she cannot show that her constitutional rights under the Fourth Amendment were violated.  Thus, McArdle and Derzis are entitled to qualified immunity as to Plaintiff's claims of excessive force.

### 4. Hoover Cannot Be Held Liable for the Constitutional Violations Alleged by Plaintiff.

Plaintiff has not successfully stated a claim against the individual police officers for violating her constitutional rights.  *See supra* Part IV.A.1.–2.  As there are no sufficient pleadings alleging that either individual Defendant violated Plaintiff's constitutional rights, Hoover cannot be held liable for their alleged  conduct.  Plaintiff makes no claims against Hoover in the Second Amended Complaint aside from those asserted against the individual officers.  Thus, Hoover is sued only as the agency which employs McArdle and Derzis.  It follows that because the claims against the individual officers are due to be dismissed, those claims against the City of Hoover itself are also due to be dismissed.

### B. Defendant Compass Bancshares, Inc.

Plaintiff brings a claim against Defendant Compass for "racial profiling" and against two of its employees or agents, who are named as fictitious parties, for reckless or negligent conduct,

---

[9]Again, this is an amendment made in Plaintiff's Second Amended Complaint that was not permitted by the court's December 5, 2006 Order granting Plaintiff's Motion for Leave to File Amended Complaint.  Since it is immaterial to the court's analysis of these motions, the court will disregard it.

malicious prosecution, "racial profiling," and defamation.  Compass's partial motion to dismiss is

due to be granted because (1) there is no claim for "racial profiling" in Alabama, and (2) this claim

cannot be brought under 42 U.S.C. § 1983 as Compass is not a state actor.  Further, Plaintiff

abandoned her claims against the fictitious parties allegedly employed by Compass (Jane Doe and

Jennifer Doe) in her Second Amended Complaint (Doc. # 23).  Therefore, the court finds these

claims are due to be dismissed as moot.

### 1.      There Is No Claim For "Racial Profiling" Under Alabama Law.

Plaintiff's claims against Compass are all contained in Count III of the Second Amended

Complaint, which includes a claim for "racial profiling."  (Doc. # 23 ¶¶ 40–53).  Neither the

Alabama Legislature nor the Alabama courts have recognized a civil cause of action for "racial

profiling," as such.  Plaintiff has failed to cite to a single decision recognizing a cause of action

called (or even similar to) "racial profiling."  Thus, Plaintiff cannot successfully state a claim for

"racial profiling."

### 2.      Neither 42 U.S.C. § 1983 Nor § 45A of the Restatement (Second) of Torts Provide A Legal Basis For A "Racial Profiling" Claim Against Compass

In an effort to avoid dismissal, Plaintiff cites to 42 U.S.C. § 1983 and the Restatement

(Second) of Torts § 45A in her reply brief.  However, nothing in the statute or the restatement section

supports a finding that a cause of action for "racial profiling" can be asserted against Compass.

In her response, Plaintiff argues that § 1983 provides a legal basis for her "racial profiling"

claim, yet her Second Amended Complaint failed to allege a claim under § 1983 as to Compass in

Count III or even cite to this section in this claim.  (Doc. # 23 ¶¶ 40–53; Doc. # 17 at 2).  Even if

Plaintiff's "racial profiling" could be construed as asserting a claim under § 1983, it would still be

due to be dismissed because Compass is not a state actor. *Nail v. Cmty. Action Agency of Calhoun County*, 805 F.2d 1500, 1501 (11th Cir. 1986). An essential element of a claim for relief under 42 U.S.C. § 1983 is that the conduct complained of must have been committed by a person acting under color of state law, *i.e.*, such conduct must be fairly attributable to the state. *See id.* at 1501–1502. The Eleventh Circuit has articulated a two part test to determine whether an action was committed by a person acting under color of state law:

> (1) First, the deprivation must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible. . . .

> (2) Second, the party charged with the deprivation must be a person who may fairly be said to be a state actor.

*Harvey v. Harvey*, 949 F.2d 1127, 1130 (11th Cir. 1992) (citing *Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982)) (internal quotations omitted).

Plaintiff's "racial profiling" claim fails as a § 1983 claim because (1) Compass is not a state actor, and, in any event, (2) it cannot be alleged that Compass was "acting under color of state law." 42 U.S.C. § 1983. As the Eleventh Circuit has noted, "only in rare circumstances can a private party be viewed as a 'state actor' for section 1983 purposes." *Harvey*, 949 F.2d at 1130. There are no circumstances alleged in this case which would justify treating Compass's alleged actions as state actions. *See NBC v. Commc'ns Workers of Am., AFL-CIO*, 860 F.2d 1022 (11th Cir. 1988) (recognizing the public function, state compulsion, and nexus/joint action tests for establishing state action by what is otherwise a private person or entity). Therefore, because Plaintiff cannot establish an essential element of a § 1983 claim as to Compass Bank, her "racial profiling" claim cannot be recast as a § 1983 claim.

Plaintiff also cites to the comment for the Restatement (Second) of Torts § 45A, entitled "Instigating Or Participating In False Imprisonment," to support her claim for "racial profiling." (Doc. # 17 at 3).  The cited comment recites the principle that a person who instigates the unlawful confinement of another is subject to liability for false imprisonment.  RESTATEMENT (SECOND) OF TORTS § 45A, cmt. c.  Plaintiff merely quotes the comment's definition of "instigation" without further explanation as to how this provides a basis for her "racial profiling" claim, and the connection is not apparent in the text of the citation.  (Doc. # 17 at 3).  Thus, Plaintiff has failed to cite to any legal authority which would allow her to proceed on a "racial profiling" claim, and this court will not create a tort where the Alabama courts have not done so.  Therefore, Plaintiff's racial profiling claim is due to be dismissed.

By foregoing any claim against the fictitious parties in the Second Amended Complaint, Plaintiff has abandoned these claims.  *Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir.2000) (failure to brief and argue issue at the district court is sufficient to find the issue has been abandoned); *McMaster v. United States*, 177 F.3d 936, 940–41 (11th Cir.1999) (claim may be considered abandoned when district court is presented with no argument concerning a claim included in the plaintiff's complaint).  Moreover, fictitious party pleading is not recognized when a suit is brought originally in federal court under the Federal Rules of Civil Procedure (as opposed to fictitious parties alleged in a plaintiff's complaint removed from state court under either diversity or federal question jurisdiction, or a claim based solely on diversity jurisdiction).  *New v. Sports & Recreation, Inc.*, 114 F.3d 1092, 1094 n.1 (11th Cir. 1997);  *see also Edwards v. Ala. Dept. of Corr.*, 81 F. Supp. 2d 1242, 1257 (M.D. Ala. 2000); *Harris v. Palm Harbor*

*Homes, Inc.*, 198 F. Supp. 2d 1303, 1304 (M.D. Ala. 2002); *Floyd v. Allstate Ins. Co.*, 989 F. Supp.

1435, 1436 (M.D. Ala. 1998); *McCree v. Sam's Club*, 159 F.R.D. 572, 573 n.1 (M.D. Ala.1995).

### C.     Defendant Jefferson County

Defendant Jefferson County argues that Plaintiff's Second Amended Complaint fails to state

a claim against it upon which relief can be granted. FED. R. CIV. P. 12(b)(6); *see also Wilson v.*

*Bailey*, 934 F.2d 301, 305 (11th Cir. 1991).  Plaintiff's allegations against Jefferson County assert

claims for false imprisonment and assault and battery arising out of Plaintiff's arrest on October 13,

2004,  and subsequent body cavity search at the Jefferson County Jail, which is where she was taken

after her arrest.  In support of its motion, Jefferson County attaches affidavit of Bettye Fine Collins,

President of the Jefferson County Commission, verifying that the Jefferson County has no control

or authority over the Sheriff's Department, which is the entity that controls the Jefferson County Jail.

(Doc. # 28 Ex. A).  Therefore, Defendant Jefferson County is not the proper defendant to answer

Plaintiff's allegations, as a municipality can be held responsible only for acts for which it is actually

responsible, *i.e.*, "acts which the [local government] has officially sanctioned or ordered." *Turquitt*

*v. Jefferson County*, 137 F.3d 1285, 1287 (11th Cir. 1998); *see also Terry v. Cook*, 866 F.2d 373,

379 (11th Cir. 1989); *Whitten v. Lowe*, 677 So.2d 778, 779–80 (Ala. Civ. App. 1995).  The claims

against Jefferson County are due to be dismissed.

## V.     CONCLUSION

For the reasons cited above, Defendants City of Hoover, Tim McArdle, and Nick Derzis's

Motion to Dismiss (Doc. # 9) is due to be granted and all claims against these Defendants will be

dismissed with prejudice.  Further, Defendant Compass Bancshares, Inc.'s Partial Motion to Dismiss

(Doc. # 13) is due to be granted, and, therefore, Plaintiff's "racial profiling" claims will be dismissed

with prejudice.  Those claims against fictitious parties alleged to be Compass employees are moot as Plaintiff has abandoned them.  Finally, Defendant Jefferson County's Motion to Dismiss is due to be granted and all claims against this Defendant will be dismissed with prejudice.  This dismissal shall not affect any other right, claim, or cause of action which Plaintiff has, or may have, against Defendant Compass Bancshares, Inc.

The only claims remaining against Defendant Compass Bancshares, Inc. are those claims listed under count three, including malicious prosecution, negligence, negligent supervision or hiring, and defamation. The court declines to exercise supplemental jurisdiction under 28 U.S.C. § 1367(c)(3) over these state law claims and, therefore, these claims are dismissed with prejudice.

A separate order in accordance with this memorandum opinion will be entered.

**DONE** and **ORDERED** this ___7th_____ day of March, 2007.

                                            _____
                                            **R. DAVID PROCTOR**
                                            UNITED STATES DISTRICT JUDGE

21